Nat G. HARRISON, Jr., Jan R. Smith and Alto Adams, d/b/a Nat G. Harrison, Jr., & Associates,

v.

LIBERTY MUTUAL INSURANCE COMPANY.

No. 18567.

United States Court of Appeals Fifth Circuit.

March 30, 1961.

Rehearing Denied June 2, 1961.

John Robert Terry, Raymond J. Dwyer, Carey, Goodman, Terry, Dwyer & Austin, Miami, Fla., for appellants.

Willis H. Flick, T. J. Blackwell, Blackwell, Walker & Gray, Miami, Fla., for appellee.

Before TUTTLE, Chief Judge, and RIVES and JONES, Circuit Judges.

RIVES, Circuit Judge.

In April of 1955 appellants Nat G. Harrison, Jr. and Associates, electrical contractors, entered into a contract with the Florida Power & Light Company to perform certain work at the latter company's Palatka plant. Included in that contract were the following provisions:

"C–21: Indemnification

"Except in cases of injuries or damages to persons or property as may be caused by the negligence of the Owner, the Contractor shall save harmless the Owner from all claims and actions of any kind arising from or incidental to the performance of this Contract and expenses incidental to such claims and actions and shall assume without expense to the Owner the defense of any such claims or actions."

"C–24: Work Performed at Contractor's Risk

"The Contractor shall take all precautions necessary and shall be responsible for the safety of the work and shall maintain all lights, guards, signs, temporary passages, or other protection necessary for that purpose. *All work shall be done at the Contractor's risk, and if any loss or damage shall result from fire* or from other cause, *the Contractor shall promptly repair or replace such loss or damage free from all expense to the Owner. The Contractor*

*shall be responsible for any loss or damage to material, tools or other articles used or held for use in connection with the work.* The work shall be carried on to completion without damage to any work or property of the Owner or of others and without interference with the operation of existing machinery or equipment." (Emphasis supplied.)

During the course of the work at the Palatka plant, a fire occurred damaging tools and materials owned by appellants, appellants' employees and the Florida Power & Light Company. Florida Power & Light demanded that appellants reimburse it in the amount of $31,609.34 for fire damage to tools and materials owned by Florida Power & Light which were in the care, custody and control of appellants at the time of the fire. The demand did not allege that appellants were negligent or that the fire was in any way their fault, but was made pursuant to contract clause C–24, quoted above.

At all times material to this case, appellants were insured under a "Comprehensive General Liability Policy" issued by appellee Liberty Mutual. Appellants thought that any liability they had incurred to Florida Power & Light as a result of the January 6 fire and contract clause C–24 was covered by this policy. Liberty Mutual disagreed. So appellants filed this action for declaratory judgment. The district court found that the "insurance policy and the endorsements thereto are clear and unambiguous" and that the "loss allegedly sustained by the plaintiffs as a result of the aforementioned fire * * *' was not an insured loss under * * * the policy * * *."

The pertinent provisions of the policy are as follows:

"Coverage B—Property Damage Liability

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.

\*　　\*　　\*　　\*　　\*　　\*

"Exclusions

*"This policy does not apply:*

"(a) to liability assumed by the insured under any contract or agreement except a contract as defined herein;

\*　　\*　　\*　　\*　　\*　　\*

"(d) *under coverage B, to injury to or destruction of* (1) property owned or occupied by or rented to the insured, or (2) except with respect to liability under sidetrack agreements, property used by the insured, or (3) except with respect to liability under sidetrack agreements and the use of elevators or escalators at the premises owned, rented or controlled by the named insured, *property in the care, custody or control of the insured* \* \*.

\*　　\*　　\*　　\*　　\*　　\*

"Definitions (a) Contract—The word 'contract' means a warranty of goods or products or, if in writing, a lease of premises, easement agreement, agreement required by municipal ordinance, sidetrack agreement, or elevator or escalator maintenance agreement."

Endorsement Serial No. 12:

"Inclusion of Contractual Liability Arising from All Contracts of the Type Described

"It is agreed that, *subject to all* the declarations, insuring agreements, *exclusions*, conditions, endorsements and other terms of the policy, such insurance as is afforded by the policy with respect to liability assumed by the insured under contract applies also to *liability assumed under the indemnity or hold-harmless provisions of each contract of the type herein described*; provided, however, the insurance afforded by this endorsement shall be limited in scope to the assumed liability stated below:

"*Type of Contract*—All written contracts entered into by the insured which are in furtherance of the insured's business operations.

"*Contracts between the named insured and Florida Power and Light Company.*" (Emphasis supplied.)

The issue in this case may be stated quite simply. Is appellants' liability under contract clause C–24 covered by Serial Endorsement 12 of the Policy?

Appellants argue that the contract is ambiguous and must be construed against the insurer. Appellee counters by asserting the contract is unambiguous and clearly there is no coverage. We agree with the appellee.

■ Appellee's position is that Serial Endorsement 12 covers potential liability under contract provision C–21. There is little doubt that C–21 is an "indemnity or hold-harmless provision" of the type mentioned in Endorsement 12. In attempting to stretch Endorsement 12 to clause C–24, we think appellants face an insurmountable obstacle. Endorsement 12 is explicitly made subject to all "exclusions" in the policy. Policy exclusion (d) (3) excluded from coverage property in the "care, custody or control of the insured * * *." Were we to accept appellants' construction, policy exclusion (d) (3) could be easily circumvented. Any insured could enter into a contract with the owner of property which is in the care, custody or control of the insured whereby the insured agreed to reimburse the owner for any damage to the property. To allow the insured to recover for this type of liability under a general contract liability endorsement would read exclusion (d) (3) right out of the policy. We think it would take somewhat more explicit language than that contained in Endorsement 12 to achieve that far-reaching result.

The judgment of the district court is

Affirmed.

On Petition for Rehearing.

PER CURIAM.

■ Appellants complain in their petition for rehearing that the opinion does not deal with their Point No. II, which is that the insurance company is estopped to deny coverage under the terms of its policy.

Appellants argue, first, that, by virtue of Form IN–6 of the Florida Power & Light Company which appellants had filled out by the insurance company, the insurance company asserted that appellants were covered for the risks in question when it marked "X" under "Yes" to the inquiry:

| "Policy includes Coverage for: | Yes | No |
|---|---|---|
| * * * * | | |
| "Liability assumed in construction agreements and other types of contracts or agreements in effect in connection with the insured operations. For Florida Power & Light Company | X | " |

That representation is not inconsistent with our interpretation of the insurance agreement. Moreover, the representations in Form IN–6 ran from the insurance company to the Florida Power & Light Company, rather than to the appellants.

■ Still further, estoppel is not applicable to this case. Appellants rely on the case of Hully v. Aluminum Company of America, D.C.S.D.Iowa, 1956, 143 F.Supp. 508, 513, which states in part: "Estoppel does not operate to create a new insurance contract, but simply to deny legal effect to a provision of the policy contract inserted for the benefit of the insurer." In this case, the attempt is to create a new policy, that is, a coverage for something that is not covered in the policy. In the Hully case, the agent "mistakenly represented [that a

**904**

certain hazard]. was covered by another policy clause insuring against unknown hazards." That is not the case here. Appellee's agent, Olinto, testified: "Specifically, did you tell them what contractual liability coverage included, sir? A. No, I did not." Appellant Harrison testified that he had no specific conversation with appellee's agent about this policy or this particular clause.

The district court found: "No misrepresentations, either in conflict or at variance with the written terms of the policy, were made to the insured by agents of the defendant regarding the nature or extent of the coverage provided by said policy."

Appellants also claim that coverage of the type claimed was required by Florida Power & Light Company. Assuming that to be material, there is no proof that Florida Power & Light Company did require such coverage.

The petition for rehearing is Denied.